UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS BRODY PASIAK,                           Case No. 17-11401

               Plaintiff,                  Avern Cohn
v.                                               United States District Judge

COMMISSIONER OF SOCIAL                           Stephanie Dawkins Davis
SECURITY,                                        United States Magistrate Judge

               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 11, 13)**

# I.     PROCEDURAL HISTORY

A.     Proceedings in this Court

On May 3, 2017, plaintiff Nicholas Brody Pasiak filed the instant suit.  (Dkt.

1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Avern Cohn referred this matter to the undersigned for the purpose of reviewing

the Commissioner's unfavorable decision denying plaintiff's claim for children's

insurance benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 11, 13).

B.    Administrative Proceedings

Plaintiff filed an application for children's insurance benefits on March 7, 2014, alleging disability beginning on October 19, 1998. (Tr. 13).[1] The claims were initially disapproved by the Commissioner on October 14, 2014. (*Id.*). Plaintiff requested a hearing and on October 8, 2015, plaintiff appeared with counsel, before Administrative Law Judge ("ALJ") Carol Guyton, who considered the case *de novo*. (Tr. 13-22). In a decision dated December 31, 2015, the ALJ found that plaintiff was not disabled prior to December 10, 2002, the date plaintiff attained age 22. (Tr. 22). Plaintiff requested a review of this decision. (Tr. 8-9). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on April 11, 2016, denied plaintiff's request for review. (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 9. All references to the same are identified as "Tr."

2

## II.   FACTUAL BACKGROUND

A.   <u>ALJ Findings</u>

Plaintiff, now 37 years old, was 17 at the time of the alleged onset date of October 19, 1998.  (Tr. 15).  Plaintiff has an undergraduate and law degree, but has no past relevant work.  (Tr. 20).  Plaintiff's application for benefits cited cystic fibrosis ("CF"), pancreatic insufficiency, bronchiectasis, Crohn's disease with fecal incontinence, anxiety, pain, fevers, fatigue and bacteria in the lungs as the bases for the claim.  The ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity since October 19, 1998, the alleged onset date.  (Tr. 15).  At step two, the ALJ found that, prior to attaining age 22, plaintiff's inflammatory bowel disease, chronic sinusitis, bronchial asthma, chronic interstitial disease, cilia syndrome and Otitis media were "severe" within the meaning of the second sequential step.  (*Id.*).  However, at step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 16).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the
> undersigned finds that, prior to attaining age 22, the

> claimant had the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a).  She
> could lift up to 10 pounds occasionally and lift and carry
> less than 10 pounds frequently.  She could stand and
> walk for about 2 hours and sit for up to 6 hours in an 8-
> hour workday with normal breaks.  She could
> occasionally climb ramps or stairs, balance, crawl, kneel,
> stoop and crouch but never climb ladders, ropes or
> scaffolds.  She should avoid concentrated exposure to
> extreme cold, heat, wetness and humidity.  She was
> limited to no greater than moderate exposure and no
> concentrated exposure to fumes, dust, odors, gases, poor
> ventilation, hazardous machinery and unprotected
> heights.  She required close proximity to a lavatory.

(Tr. 16).  At step four, the ALJ found that plaintiff could not perform any past

relevant work.  (Tr. 20).  At step five, the ALJ denied plaintiff benefits because she

found that there were jobs that exist in significant numbers in the national economy

that plaintiff could perform.  (*Id.*).

   B.   Plaintiff's Claims of Error

   Plaintiff claims error at Step Three of the sequential analysis.  More

specifically, plaintiff argues that the ALJ erred in not determining whether

plaintiff's impairments met or medically equaled Listings 3.04B and 3.04C (cystic

fibrosis), 3.07 (Bronchiectasis), 5.06 (Inflammatory Bowel Disease), or 14.07

(Immune deficiency disorders, excluding HIV infection).  (Dkt. 11, at p. 10-11).

Instead, the ALJ's discussion at Step Three was simply one paragraph in which the

ALJ did not even identify which listings she considered.  According to plaintiff,

plaintiff has cystic fibrosis which meets Listing 3.04B and 3.04C.  Plaintiff cites

medical records establishing physician intervention to meet Listing 3.04 B and C criteria.  (*Id.* at p. 15-17).  The listing for cystic fibrosis also indicates that the condition should be evaluated under the digestive body systems Listings at 5.00.  Plaintiff contends that 5.06 is also met.  (*Id.* at p. 12-18).

Plaintiff also argues that the ALJ abused her discretion in analyzing whether plaintiff's impairments met or medically equaled a listing without the benefit of an expert opinion on equivalence.  Plaintiff points out that State agency consultant Dr. Ramirez-Jacobs addressed only Listings 3.02 and 5.06, but states that the relevant listing sections include 3.04, 3.07, 5.06, or 14.07.  (*Id.* at p. 18).  Dr. Ramirez-Jacobs rendered her opinion October 14, 2014, and plaintiff submitted more medical records after that date.  (*Id.* at p. 18).  After the state agency physician rendered the opinion, the new medical evidence diagnoses plaintiff with cystic fibrosis; an updated expert opinion would be able to discuss the impact of the diagnosis in combination with the other impairments.  (*Id.* at p. 19).

C.    Commissioner's Motion for Summary Judgment

The Commissioner acknowledges that it was error for the ALJ to neglect to indicate which Listings she considered at Step Three and to not discuss specific facts from the record.  (Dkt. 13, at p. 6-7).  However, the Commissioner asserts that the error is harmless because the medical records from the relevant period do not indicate listing-level symptoms.  First, as to cystic fibrosis, there are no

laboratory tests establishing the diagnosis, which means plaintiff has not met the diagnostic criteria. (*Id.* at p. 7-8). Further, even if plaintiff met the diagnostic criteria, the Commissioner asserts that the medical evidence does not meet the requirements of 3.04. For example, much of the medical evidence plaintiff cites to demonstrate physician intervention does not appear to be for bronchitis, hemoptysis or respiratory failure (as required by the B criteria). (*Id.* at p. 8-10). And as to the C criteria, the Commissioner acknowledges that plaintiff received IVIG, an intravenous antimicrobial therapy (as required by the listing), but notes that the state agency physician considered that plaintiff received a series of infusions yet still concluded that plaintiff's conditions did not meet or equal a listing. (*Id.* at p. 10; Tr. 86). By contrast, the Commissioner discusses plaintiff's activities during the relevant period, which demonstrate that plaintiff was active in sports and did well in school. (*Id.* at p. 10-11).

Regarding Listing 5.06, although the record reflects that plaintiff had a history of inflammatory bowel disease, the Commissioner asserts that plaintiff otherwise does not meet the listing. (*Id.* at p. 13). Again, the Commissioner notes plaintiff's active lifestyle during the relevant period, despite her inflammatory bowel disease flare-ups. In light of this active lifestyle, the Commissioner asserts that the ALJ's error is harmless.

The Commissioner contends that plaintiff also did not meet the burden to establish Listings 3.07 and 14.07 are met or equaled. (*Id.* at p. 14). In any event, the Commissioner analyzes both listings. According to the Commissioner, plaintiff does not meet 14.07 because, although plaintiff has an immune deficiency diagnosis (sinusitis), it resolved after a few weeks and thus responded to treatment. (*Id.* at p. 14-15). Plaintiff does not meet 3.07 because plaintiff failed to demonstrate severe respiratory issues meeting the B criteria (which are identical to 3.04B). (*Id.* at p. 15). Plaintiff does not meet the A criteria either because plaintiff has not shown impaired pulmonary functioning through pulmonary function testing. (*Id.* at p. 15-16). In 2002, her testing was within normal limits and showed that pulmonary functioning was stable. (*Id.* at p. 16; Tr. 361, 362, 362).

The Commissioner does not agree that the ALJ was required to obtain updated expert opinion on the Listings. The ALJ considered the evidence submitted after the state agency physician rendered her opinion, and in any event, plaintiff did not point to particular notes in the newer evidence that would support a finding that plaintiff's impairments met or medically equaled one of the listings during the relevant timeframe, i.e. before turning 22. (*Id.* at p. 17). For this same reason the Commissioner contends there is no error in the agency physician's failure to consider listings 3.04, 3.07, 5.06, and 14.07.

D.      Plaintiff's Reply

In reply plaintiff argues that the Commissioner has not established harmless error under the more stringent standard articulated in *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009).  Specifically, a Step Three error is harmless only when concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled.  (Dkt. 15, at p. 2-3).  Plaintiff asserts that the medical evidence establishes a history of chronic and debilitating illness prior to plaintiff's attaining age 22 that resulted in hospitalizations and doctor visits.  (*Id.* at p. 3).  Plaintiff reiterates the argument that it was error for the ALJ to render a Step Three decision without the benefit of updated expert opinion.

## III.   DISCUSSION

A.      Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If the

claimant does not obtain relief during this administrative review process, she or he

may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537

(6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*,

486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at

any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner must show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

     C.    <u>Analysis and Conclusions</u>

        1.    The Listings

Under the theory of presumptive disability, a claimant is eligible for benefits if he or she has an impairment that meets or medically equals a Listed Impairment. *See Christephore v. Comm'r of Soc. Sec*., 2012 WL 2274328, at *6 (E.D. Mich.

June 18, 2012).  When considering presumptive disability at Step Three, "an ALJ

must analyze the claimant's impairments in relation to the Listed Impairments and

must give a reasoned explanation of his findings and conclusions in order to

facilitate meaningful review."  *Id.* (citing *Reynolds v. Comm'r of Soc. Sec.*, 424

Fed. Appx. 411, 416 (6th Cir. 2011)).   An ALJ's failure to sufficiently articulate

Step Three findings is error.   *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d

846, 858-59 (E.D. Mich. 2012); *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v.

Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. Sept. 29, 2012) (discussing reversal in

a series of cases where the ALJ "made only a blanket statement that the claimant

did not meet or equal a Listing section").  For example, in *Andrews v. Comm'r of

Soc. Sec.*, 2013 WL 2200393 (E.D. Mich. May 20, 2013), plaintiff argued that the

ALJ erred in failing to consider whether her cervical and lumbar spine impairments

met or medically equaled Listing 1.04A for "disorders of the spine."  *Id.* at *11.

The ALJ there simply stated "[t]he claimant does not have an impairment or

combination of impairments that meets or medically equals one of the listed

impairments. . . ."  *Id.*  The court noted that the ALJ explicitly found that plaintiff

suffers from degenerative disc disease and cervical spondylosis, and thus "should

have considered and discussed [plaintiff's] impairment(s) relative to Listing

1.04A," and "[h]er failure to do so constitutes legal error."  *Id.* at *12.

Nevertheless, the burden of proof for establishing that an impairment meets or

equals the requirements of a listed impairment rests with the claimant.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ did not provide a fulsome discussion at Step Three.  Rather, she summarily stated,

> The medical evidence does not include findings that would satisfy the applicable listings for any of the severe impairments that are documented.  No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of impairments.

(Tr. 16).  The ALJ neither mentioned nor discussed a particular Listing, despite the State agency physician's consideration of Listings 3.02 and 5.06.  (Tr. 87). Compounding this inadequate discussion at Step Three, plaintiff argues that the ALJ should have considered listings 3.04, 3.07, 5.06, and 14.07.

"[N]either the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'"  *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 432 (6th Cir. 2014) (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. Appx. 639, 641 (6th Cir. 2013)). However, an ALJ must consider and discuss a relevant listing when the record raises 'a substantial question as to whether [the claimant] could qualify as disabled' under a listing."  *Id*. (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th

Cir. 1990)).  In order to raise a "substantial question," a claimant "must point to

specific evidence that demonstrates [she] reasonably could meet or equal every

requirement of the listing."  *Id. see also Dew v. Comm'r of Soc. Sec.*, 2017 WL

744238 at *2 (E.D. Mich. Feb. 27, 2017).  Without this specific evidence, an ALJ

does not "commit reversible error by failing to evaluate a listing at Step

Three."  *Smith-Johnson*, 579 Fed. Appx. at 433; *see also Roberts v. Comm'r of

Soc. Sec.*, 2017 WL 5501323 at *10 (N.D. Ohio Oct. 19, 2017); *Andres v. Comm'r*

*of Soc. Sec.*, 2017 WL 3447849 *16 (N.D. Ohio July 11, 2017).

In this case, plaintiff has not pointed to specific evidence demonstrating that

Pasiak reasonably could meet or equal Listing 3.04 (Cystic Fibrosis).  Indeed,

plaintiff does not address the diagnostic criteria for cystic fibrosis ("CF") in Listing

3.00 at all, while the Commissioner contends that plaintiff, in fact, does not meet

the diagnostic criteria.  Listing 3.00(d), states, in pertinent part,

> Cystic fibrosis is a disorder that affects either the
> respiratory or digestive body systems or both and is
> responsible for a wide and variable spectrum of clinical
> manifestations and complications.  Confirmation of the
> diagnosis is based upon an elevated sweat sodium
> concentration or chloride concentration accompanied by
> one or more of the following: the presence of chronic
> obstructive pulmonary disease, insufficiency of exocrine
> pancreatic function, meconium ileus, or a positive family
> history. . . .  To establish the diagnosis of cystic fibrosis,
> the sweat sodium or chloride content must be analyzed
> quantitatively using an acceptable laboratory technique.
> Another diagnostic test is the "CF gene mutation
> analysis" for homozygosity of the cystic fibrosis gene.

> The pulmonary manifestations of this disorder should be
> evaluated under 3.04.  The nonpulmonary aspects of
> cystic fibrosis should be evaluated under the digestive
> body system (5.00).

20. C.F.R § Pt. 404, Subpt. P, App. 1 (As effective on the date of the ALJ

decision).

Here, the record contains only negative sweat test and genetic testing for CF.

(*See* Tr. 450, 454, 457, 459, 460, 472, 487, 934, 940, 953, 989).  As such, plaintiff

does not meet the diagnostic criteria for CF.  However, in 2013 the University of

Michigan physicians completing these tests and evaluating plaintiff's pulmonary

issues diagnosed plaintiff with atypical CF or a CF-like condition in view of

plaintiff's symptoms but negative testing.  (Tr. 454, 459, 1039 (symptoms were

suggestive of CF, and was to be treated for CF)).  Additionally, plaintiff's x-rays

were "consistent with the clinical history of cystic fibrosis" dating back to 1994

(Tr. 805); and Dr. Salazar, plaintiff's doctor since childhood, relayed in a February

2015 letter that plaintiff was initially misdiagnosed.  (Tr. 225, 899).  The state

agency medical advisor, Dr. Ramirez-Jacobs, was aware of both the 1994 x-rays

and the 2013 findings of likely cystic fibrosis, and she sent for the Cleveland Clinic

new medical evidence record containing the 2013 finding (Tr. 83, 85), yet she

nevertheless did not expressly discuss the CF listings and opined that those

discussed were not met or medically equaled.  Notably, Dr. Ramirez-Jacobs did not

have the benefit of Dr. Salazar's opinion concerning an initial misdiagnosis and

later-received records from the University of Michigan also finding "atypical CF" or a "CF-like condition." (Tr. 454). Thus, while plaintiff does not meet the diagnostic criteria, it is at least arguable that if the ALJ had a medical opinion from a medical advisor who had the opportunity to review this later-submitted medical evidence, a finding that plaintiff medically equaled the diagnostic criteria for CF is not implausible. *See, e.g.*, *Brown v. Comm'r of Soc. Sec.*, 2014 WL 222760, at \*14 (E.D. Mich. Jan. 21, 2014) (Drain, J.) (Although involving a case where there was no expert opinion on equivalence at all, the court recognized that a medical expert opinion on equivalence plausibly could have found equivalence if given the opportunity to view certain medical opinion evidence that was favorable to a finding of disability, in combination with the other evidence in the record.). However, the analysis does not stop there. The Listing requires that the claimant also satisfy the pulmonary and non-pulmonary criteria of Listing 3.04 and Listing 5.0, and as discussed below, the evidence marshaled by plaintiff is inadequate to the task.

Notwithstanding the diagnostic criteria, the medical evidence simply does not show that plaintiff could reasonably meet or equal the criteria of paragraphs B or C of Listing 3.04.[2] Listing 3.04 provides, in pertinent part,

3.04 Cystic fibrosis. With:

. . .

---

[2] Plaintiff does not argue that the A criteria are met.

B. Episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum) or respiratory failure (documented according to 3.00C), requiring physician intervention, occurring at least once every 2 months or at least six times a year.  Each inpatient hospitalization for longer than 24 hours for treatment counts as two episodes, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of episodes;
Or
C. Persistent pulmonary infection accompanied by superimposed, recurrent, symptomatic episodes of increased bacterial infection occurring at least once every 6 months and requiring intravenous or nebulization antimicrobial therapy.

Listing 3.00C provides, in pertinent part,

C. Episodic respiratory disease.  When a respiratory impairment is episodic in nature, as can occur with exacerbations of asthma, cystic fibrosis, bronchiectasis, or chronic asthmatic bronchitis, the frequency and intensity of episodes that occur despite prescribed treatment are often the major criteria for determining the level of impairment.  Documentation for these exacerbations should include available hospital, emergency facility and/or physician records indicating the dates of treatment; clinical and laboratory findings on presentation, such as the results of spirometry and arterial blood gas studies (ABGS); the treatment administered; the time period required for treatment; and the clinical response.  Attacks of asthma, episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum), or respiratory failure as referred to in paragraph B of 3.03, 3.04, and 3.07, are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital,

19

> <u>emergency room or equivalent setting</u>.  Hospital
> admissions are defined as inpatient hospitalizations for
> longer than 24 hours.  The medical evidence must also
> include information documenting adherence to a
> prescribed regimen of treatment as well as a description
> of physical signs.  For asthma, the medical evidence
> should include spirometric results obtained between
> attacks that document the presence of baseline airflow
> obstruction.  (Emphasis added).

Regarding the B criteria, the record does not contain the required number of episodes of bronchitis, pneumonia, or hemoptysis requiring physician intervention. Nor does the record contain prolonged episodes lasting one or more days requiring "intensive treatment" in a hospital, emergency room, or equivalent setting (respiratory failure under 3.00C).  Plaintiff chose a twelve month period from the onset date of December 11, 1998 through December 11, 1999.  (Dkt. 11, at p. 15). Plaintiff had numerous doctor's visits during that year, but those visits do not reasonably meet the B criteria.  For example, on December 17, 1998, plaintiff was examined for a "recheck," where, amongst others, an impression of bronchiectasis was noted, but the lungs were clear and functioning normally.  (Tr. 326).  This visit does not demonstrate an episode of bronchitis or pneumonia requiring physician intervention, or respiratory failure requiring intensive treatment in a hospital. Many of plaintiff's other records during the twelve month period fall into the same category.  (Tr. 329/906 ("doing well," lungs clear), 330 ("doing very well with asthma," lungs clear), 332 (lungs clear), 335 (normal examination), 336 (lungs

20

clear), 337 ("doing very well," normal examination), 338 (diagnosed acute

sinusitis, lungs clear), 339 (sinusitis resolved, normal exam), 340 (pain from

wisdom tooth extraction), 342 (only lung notation is rhonchi)) (records dating from

January 25, 1998 to November 6, 1999).

On January 13, 1999, plaintiff presented feeling sick, with moderate rhonchi,

rales, and moderate wheezing.  There was a mild increase in respiratory effort and

mild decrease in air exchange.  (Tr. 328).  The physician diagnosed "viral

syndrome" and prescribed Cipro and Bioxin.  (*Id.*).  On March 13, 1999, plaintiff

presented with chest congestion, cough, and yellow sputum.  (Tr. 331).  Plaintiff

had rhonchi and a mild decrease in air exchange.  She was assessed with BA, ICS,

ulcerative colitis – remission, chronic sinusitis, and what appears to be acute

exacerbation of bronchitis (the handwriting is unclear).  (*Id.*).  On April 7, 1999,

plaintiff presented with moderate rhonchi and wheezes, mild increase in respiratory

effort, moderate decrease in air exchange.  The physician assessed "BAA, IBS, and

viral syndrome."  (Tr. 334).  The physician prescribed increased use of Flovent and

increased intake in fluids and Tylenol.  (*Id.*).  In October 1999, plaintiff was

diagnosed with pneumonia, and was prescribed Z-Pak.  (Tr. 341).  These episodes,

to the extent they demonstrate episodes of bronchitis and/or pneumonia as required

by the listing,[3] do not reflect an occurrence rate of every two months or at least six in a year.  At best, there are four episodes in this year-long period.  The episodes also do not qualify as an episode of "respiratory failure" under 3.00C because the episodes did not require "intensive treatment" including antibiotic administration in a hospital or equivalent setting.  Where plaintiff was prescribed an antibiotic for respiratory issues—January and October—there is no indication that the antibiotic was administered anywhere but at home.  Home would not seem to be an equivalent setting to a hospital or emergency room.

In light of the foregoing medical evidence during the year in question, the undersigned concludes that the evidence does not raise a substantial question as to whether plaintiff met the B criteria during the relevant time period.  There is also no substantial question as to whether plaintiff equals the B criteria as none of the other medical records from this time period, noted above, indicate problems with the lungs.  *See Medlock v. Berryhill*, 2017 WL 4099498, at *3 (W.D. Ark. Sept. 15, 2017) (Finding that the plaintiff did not demonstrate that his severe impairment CF met or equaled Listing 3.04B where he had only four episodes in a period of twelve consecutive months).

---

[3] There is no indication in the record that plaintiff ever had hemoptysis.  Instead, the record indicates "no hemoptysis."  (Tr. 451).

22

The medical evidence discussed above is also relevant to the C criteria, but paragraph C does not limit the evidence to a one-year period.  In addition to the episodes discussed above, plaintiff was hospitalized for asthma exacerbation (characterized as a "mild asthma flare consisting of a cough accompanied by wheezing and mild production of phlegm) and ulcerative colitis exacerbation in September 2000.  (Tr. 248).  Plaintiff was treated with nebulized bronchodilators and steroids for the asthma exacerbation.  (*Id.*).  Importantly, this asthma exacerbation was not a pulmonary infection accompanied by bacterial infection. As for the records discussed above, while the four episodes are within six months of each other, there is no indication in the record that the episodes were considered to be "pulmonary infections" accompanied by superimposed, recurrent, symptomatic episodes of increased bacterial infection[4] or that plaintiff required intravenous or nebulization antimicrobial therapy.  Plaintiff was diagnosed with "URI," which appears to reference an upper respiratory infection, on December 27, 2001, but had no cough and the only lung sound was rhonchi.  (Tr. 359).  And, aside from the URI, plaintiff was asymptomatic.  (*Id.*).  She presented again with URI symptoms and nasal congestion on March 29, 2002.  (Tr. 361).  On March 29, plaintiff's PFT (pulmonary function test) was mildly decreased but within normal

---

[4] The undersigned further notes that her January and April "viral syndrome" diagnoses do not appear to indicate a bacterial infection.

limits and her peak flows were stable.  By May 2002, plaintiff denied any cough
and reported that "pulmonary-wise" plaintiff was stable and the lungs were clear.
(Tr. 363, 364).  Plaintiff's lungs were noted as "clear" again in February 2003,
after the relevant period.  (Tr. 366).  These records do not demonstrate persistent
pulmonary infection accompanied by episodes of bacterial infection requiring
antimicrobial therapy as required by the Listing.

The undersigned acknowledges that plaintiff was receiving Remicade
infusions regularly, but these infusions were for the purpose of resolving or
reducing her irritable bowel disease symptoms, not for any respiratory issue.  (Tr.
359, 360, 362, 366).  Plaintiff was also receiving IVIG (Intravenous
Immunoglobulin) infusions, although it does not appear these infusions were
*required*, as plaintiff voluntarily elected to stop the treatment at times due to time
constraints, and the infusions were not prescribed as part of the remedy for the
episodes highlighted above.  (*See, e.g.*, Tr. 354).  Moreover, the medical evidence
during the relevant period suggests that her lung problems, whether it be "viral
syndrome" or pneumonia, resolved, and thus were not persistent pulmonary
infections.  As such, the undersigned suggests that the medical evidence does not
raise a substantial question as to whether plaintiff meets or equals the C criteria.

24

Because the medical evidence does not raise a substantial question as to whether plaintiff meets or equals 3.04, the ALJ did not reversibly err in failing to consider that listing.

The State agency physician considered Listing 5.06 (Inflammatory Bowel Disease ("IBD")) (Tr. 87), but it is not clear from the decision whether the ALJ also considered the listing (Tr. 16).  In any event, any error is harmless because there is no substantial question as to whether plaintiff meets or equals the listing. Listing 5.06 provides,

> 5.06 Inflammatory bowel disease (IBD) documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with:
> A. Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6–month period;
> OR
> B. Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6–month period:
> 1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or
> 2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or
> 3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

25

4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or
6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

Plaintiff's argument regarding this listing is not particularly helpful, as plaintiff does not point to specific medical records demonstrating that plaintiff might reasonably meet or equal any of the criteria. (Dkt. 11, at p. 15-17). As to the A criteria of this listing, there is no evidence in the record demonstrating or suggesting any obstruction of stenotic areas requiring hospitalization for intestinal decompression or for surgery. Plaintiff was hospitalized for ulcerative colitis exacerbation in September 2000, but did not require any surgery or intestinal decompression. (Tr. 248).

Regarding the B criteria, a review of the record indicates that there is no evidence of anemia, a serum albumin level, tender abdominal mass, perineal disease with a draining abscess or fistula (plaintiff denied any history of fistula, perineal disease, or abscess (Tr. 487)), or involuntary weight loss of at least 10 percent from the baseline weight during the relevant period. In 2014 and 2015, it was noted that plaintiff has had "anemia, iron deficiency." (*See, e.g.,* Tr. 490, 491,

942, 1037, 1066).  In February and April 2012 and August 2014, she was negative for anemia.  (Tr. 528, 553, 560).  These records are well beyond the period under consideration (October 1998 to December 2002) and do not indicate that the anemia diagnosis relates back to the relevant period.  Moreover, during plaintiff's September 2000 hospitalization for exacerbation of ulcerative colitis there is no mention of anemia.  (Tr. 248-54, 258).  Plaintiff did, however, go through a period of daily supplemental internal nutrition, "TPN," in September 2000 (Tr. 349), and went off of it sometime on or near October 30, 2000.  (Tr. 350, plaintiff's physician noting that plaintiff was off "TPN" at that point and was on regular foods.).  However, because plaintiff did not experience any of the other B criteria (which requires at least two of the circumstances listed), plaintiff does not reasonably meet or equal the listing.  An impairment that meets only some of the medical criteria and not all does not qualify, despite its severity.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Further, the state agency physician did not find that plaintiff met or equaled this listing.

Listing 3.00D explains that the nonpulmonary manifestations should be considered under Listing 5.00 and should be considered in combination with 3.04.  Any failure to consider 3.04 in combination with 5.06 is harmless because, as demonstrated above, plaintiff has not provided evidence which raises a substantial question as to whether she meets or equals either of these listings.

Plaintiff also lists Listings 3.07 and 14.07 when arguing that plaintiff meets or equals listings that the ALJ did not consider.  Apparently in an abundance of caution, the Commissioner addresses the Listings and argues that plaintiff does not meet or equal either.  However, plaintiff provides no argument on these listings and makes no effort to connect the medical evidence to the listings.  Thus, whether plaintiff meets or equals Listings 3.07 and 14.07 will not be addressed.  To the extent plaintiff is arguing that Listing 3.02 (a listing the State agency physician considered) is also met, because there is no argument in support of the listing, the undersigned also declines to address Listing 3.02 either.  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (citations omitted); *see also Marko v. Comm'r of Soc. Sec.*, 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) (citing *Jones v. Comm'r of Soc. Sec.*, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [Plaintiff's] 'argument' or find law supporting [his or] her claims.  This Court does not conduct a de novo review in social security proceedings, and certainly cannot be expected to craft an argument on [Plaintiff's] behalf.")).

2.      SSR 96-6p

Plaintiff cites SSR 96-6p in support of the argument that it was error for the

ALJ to fail to order an updated state agency opinion on the listings to consider

evidence submitted after the state agency physician rendered an opinion.  (Dkt. 11,

at p. 18).  SSR 96-6p provides, in relevant part,

> When an administrative law judge or the Appeals
> Council finds that an individual s impairment(s) is not
> equivalent in severity to any listing, the requirement to
> receive expert opinion evidence into the record may be
> satisfied by [a Disability Determination and Transmittal
> Form] signed by a State agency medical or psychological
> consultant.  However, an administrative law judge and
> the Appeals Council must obtain an updated medical
> opinion from a medical expert in the following
> circumstances:
> . . .
> When additional medical evidence is received that in the
> opinion of the administrative law judge or the Appeals
> Council may change the State agency medical or
> psychological consultant's finding that the impairment(s)
> is not equivalent in severity to any impairment in the
> Listing of Impairments.

SSR 96-6p, 1996 WL 374180, at *3-4.  First, the State agency physician who

considered Listings 3.02 and 5.06 signed the Disability Determination and

Transmittal Form.  (Tr. 91, 92).  Second, the undersigned notes that SSR 96-6p

"vests the discretion to obtain an updated medical opinion solely in the "opinion"

of the ALJ."  *Sharay v. Comm'r of Soc. Sec.*, 2016 WL 8114220, at *10 (Aug. 28,

2016).  Moreover, as discussed above, none of the evidence in the record (relevant

to the period in question, i.e. between October 1998 and December 2002) raises a substantial question as to whether plaintiff meets or equals the Listings discussed above. That evidence includes the "new" diagnosis of a CF-like condition of the lungs. There does not appear to be any "new" evidence regarding plaintiff's digestive system that would relate back to the relevant period. As such, it does not appear that the state agency physician would come to a different conclusion on the listings in light of the newly submitted evidence. Therefore, the undersigned suggests that there is no error under SSR 96-6p.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 30, 2018                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 30, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7850
<u>tammy_hallwood@mied.uscourts.gov</u>